```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

JONES WELDING COMPANY, INC.       :
                                  :
    Plaintiff,                    :
                                  :
vs.                               : CIVIL ACTION NO. 12-00741-CG-B
                                  :
PACECO CORPORATION, *et al.*,     :
                                  :
    Defendants.                   :

## REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff Jones Welding Company, Inc.'s Motion to Remand. (Doc. 26). The motion, which has been fully briefed and is ripe for resolution, has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Plaintiff's Motion to Remand (Doc. 26) be **DENIED**.

### I. Background Facts

Plaintiff, Jones Welding Company, Inc. ("Plaintiff"), commenced this personal injury action in the Circuit Court of Mobile County, Alabama on October 31, 2012, against Defendants PACECO Corporation ("PACECO"), American Electric Power Corporation ("AEP"), Wellcheck, Inc. ("Wellcheck"), and Graham Brothers Machine, Inc. ("Graham"). (Doc. 1-1 at 2-3). In the Complaint, Plaintiff alleges that Defendants are liable for

breach of contract and work and labor done in the amount of $60,826.85, plus consequential damages flowing from the alleged breach of contract. (Id., at 7-8). In addition, Plaintiff seeks compensatory, consequential, and punitive damages against Defendants for slander, libel, tortious interference with a business relationship, and fraud. (Id., at 9-11).

According to Plaintiff, prior to May 11, 2012, AEP discovered that it had problems with the gears in a major crane at its facility at Sandy Level, Virginia. (Id., at 4). PACECO, on behalf of AEP, placed an order with Wellcheck for the purchase and manufacture of six new gears for the crane. (Id.). Wellcheck lacked the capacity or expertise to manufacture the gears, and it contacted Graham, who also lacked the capacity or expertise to manufacture the gears. (Id.). Graham then contacted Plaintiff, Jones Welding. (Id.).

When Plaintiff agreed to manufacture the gears in question, AEP sent agents to Plaintiff's facilities to inspect and approve the facilities prior to any work commencing. (Id.). Bill Carol and Erin Eberts toured Plaintiff's facility on behalf of AEP on June 27, 2012. (Id., at 5). Following the tour of Plaintiff's facilities, AEP and PACECO approved the manufacturing of the gears by Plaintiff and made certain representations both in writing and verbally to Plaintiff that the gears were to be manufactured under "normal standards" as "spur gears" and that

Plaintiff would be paid $60,826.85 for the job. (Id.).

Based on AEP's and PACECO's representations, as well as the purchase order and gear set drawings given to Plaintiff by AEP and PACECO, Plaintiff purchased the steel plate material from a third party, Kloeckner. (Id.). According to Plaintiff, at no time did AEP or PACECO make "AGMA Standards" or "Gear Standards" part of the contract, nor did they require gear quality beyond "the normal standards." (Id.).

When Plaintiff manufactured the six gears, the largest of the gears, number six, contained an "inclusion," which occurred during the manufacture of the steel plate by Kloeckner. (Id.). When Plaintiff delivered the gears to AEP, PACECO urged AEP to conduct an ultrasonic examination of the inclusion area on the sixth gear. (Id.). According to Plaintiff, at that time, an agent of PACECO, Sun Huang, began to denigrate and defame Plaintiff, claiming that Plaintiff and its employees were incompetent and incapable of performing the work. (Id., at 6). As a result, AEP rejected all six gears based upon the problem with the inclusion in the sixth gear. (Id.). AEP did not give Plaintiff an opportunity to mitigate or cure the alleged defect with the sixth gear but instead, at PACECO's urging, contracted with a third party to manufacture gears pursuant to a new set of specifications not provided to Plaintiff. (Id.). According to Plaintiff, the gears it manufactured for AEP were "slow moving

3

gears for a large crane," but the new gears for which AEP contracted with the third party manufacturer were helical gears. (Id.). Because of PACECO's "condemnation" of the gears made by Plaintiff and its employees' written and verbal defamations of Plaintiff, Plaintiff lost the contract with AEP and was unable to procure future work from AEP or other customers. (Id.).

On December 7, 2012, AEP, with the consent of all defendants, filed a Notice of Removal to this Court under 28 U.S.C. §§ 1441 and 1446. AEP asserts the existence of subject matter jurisdiction under § 1332.[1] (Doc. 1 at 1-2; Docs. 2, 3, 4). On December 21, 2012, Plaintiff filed the instant Motion to Remand this action to state court. (Doc. 26). Plaintiff contends that Defendants have failed to establish that the amount in controversy exceeds $75,000. (Doc. 26). The motion has been fully briefed and is now ready for resolution.

## II. Standard of Review

As set forth above, this action was removed by Defendant

---

[1] According to AEP, it was served with notice of the original complaint on November 7, 2012; PACECO and Wellcheck were served on November 6, 2012; and Graham was served on November 8, 2012. (Doc. 1 at 6). Plaintiff does not dispute the accuracy of these service dates, nor does Plaintiff dispute the timeliness of the Notice of Removal. Plaintiff also does not dispute that the citizenship of these parties is diverse. Plaintiff's only objection to removal is that Defendants have failed to establish the requisite amount in controversy. (Doc. 26 at 1-2; Doc. 27).

AEP pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1).  Title 28 U.S.C. § 1441(a) provides, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

In addition, 28 U.S.C. § 1446(b) provides in part:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

It is well established that, "[i]n a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a preponderance of the evidence." Wiltew v. Parker, 2009 U.S. Dist. LEXIS 101741, *1-2, 2009 WL 3615041, *2 (S.D. Ala. Oct. 30, 2009); Lowery v. Alabama Power Co., 483 F.3d 1184, 1210 (11th Cir. 2007)).  In a removal action, the burden is upon the defendant. Id.; see also Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th

5

Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction . . . [and] [a]ny doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court.")). In addition, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand." Holloway v. Morrow, 2008 U.S. Dist. LEXIS 10318, *5, 2008 WL 401305, *2 (S.D. Ala. Feb. 11, 2008) (citing University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); see also Russell Corp. v. American Home Assur., Co., 264 F.3d 1040, 1050 (11th Cir. 2001) ("Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."). "Thus, under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff -- be it the initial complaint or a later received paper -- and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery, 483 F.3d at 1213.

Where the alleged basis for federal jurisdiction is

diversity under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000. See 28 U.S.C. § 1332(a). With respect to the amount in controversy requirement, where the plaintiff "has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza, II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). A removing defendant need only show that "the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." Roe v. Michelin North America, Inc., 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir. 1996)). A removing defendant is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Renfroe v. Allstate Property and Cas. Ins. Co., 2010 U.S. Dist. LEXIS 111336, *6, 2010 WL 4117038, * 2 (S.D. Ala. Sept. 23, 2010) (quoting Pretka, 608 F.3d at 754). "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Beasley v. Fred's Inc., 2008 U.S. Dist. LEXIS 26210, *3-4, 2008 WL 899249, *1 (S.D. Ala. Mar. 31, 2008) (quoting Williams v. Best Buy Co.,

7

269 F.3d 1316, 1319 (11th Cir. 2001)). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Id.

In addition, settlement offers "count[ ] for something" in determining whether a plaintiff's claim exceeds the jurisdictional requirement of $75,000, exclusive of interest and costs. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994). Courts within this district have held that a settlement demand is actually relevant evidence of the amount in controversy if it includes specific information to reflect a reasonable estimate of the plaintiff's claim. Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). In addition, the Eleventh Circuit has made clear that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe, 613 F.3d at 1062.

### III. Analysis

In the complaint in this case, Plaintiff alleged compensatory damages for Defendants' breach of contract in the precise amount of $60,826.85. (Doc. 1-1 at 7). In addition, Plaintiff alleged, but did not specify an amount for, consequential damages flowing from the alleged breach of

contract, as well as compensatory and punitive damages resulting from the multiple intentional torts allegedly committed by Defendants, including slander, libel, tortious interference with a business relationship, and fraud. (Id., at 7-11).

Because the amount in controversy is not facially apparent from the complaint, the Court considers other relevant evidence of the amount in controversy in this case. The evidence shows that on December 4, 2012, Roy Parker, an officer of Jones Welding, extended a written settlement demand to Defendant PACECO in which he stated in part:

> Jones Welding's requirements to settle this are as follows:
>
> First we need to be paid for the gears and services that we provided originally on the project. Furthermore, funds to compensate us for our time and expenses that we have spent on this project after the gears were shipped. The total we would like for this is $80,000.00 to date.
> . . .
> Also if these terms are met this will be a global settlement.

(Doc. 1-2 at 1; Doc. 27 at 2; Doc. 41 at 5; Doc. 43 at 3).[2]

Plaintiff suggests that its settlement demand does not show that the amount in controversy in this case exceeds $75,000

---

[2] Parker also demanded a letter stating, in essence, that Jones Welding had properly manufactured the gears in question and that any problem with the gears was not Jones Welding's fault. (Doc. 1-2 at 1).

because its settlement demand may include interest, costs, and attorneys' fees. (Doc. 27 at 3). However, the settlement demand specifically ties the figure demanded to the "need to be paid for the gears and services . . . provided originally on the project [and] the time and expenses . . . spent on this project after the gears were shipped." (Doc. 1-2 at 1). It reflects a reasonable estimate by Plaintiff of the actual value of its performance under the contract both before and after the gears were shipped. It does not appear, as Plaintiff claims, to include interest, costs, attorneys fees, or any other item of damage. Furthermore, it does not appear to be speculative; it does not appear to be an arbitrary lump sum that cannot be attributed to specific items of damage; and it does not appear to be mere puffing or posturing.[3] Cf. Jackson, 651 F. Supp. 2d at 1281-82 (mere lump sum amount offered by a party, without

---

[3] Plaintiff's reliance on the unpublished opinion in Wright Drugs, Inc. v. Health Benefit Servs., Inc., Civil Action No. 03-00400 (S.D. Ala. September 3, 2003) is misplaced. In Wright, this Court remanded the case to state court after finding that plaintiff's $250,000 *oral* settlement demand, which was subsequently memorialized in writing by defense counsel, did not constitute "other paper" under § 1446(b) for purposes of triggering the thirty day removal period. (See id., Doc. 20). The question of whether an oral settlement demand triggers the removal period under § 1446(b) is not at issue in this case. Moreover, the Court in Wright noted that the settlement demand was not based on specific information regarding plaintiff's damages but was mere posturing by the plaintiff. That is not the case here.

specific information suggesting or clarifying what the amount is for, should not be considered in assessing the amount in controversy, as "[s]ettlement offers commonly reflect puffing and posturing"). Because the demand in this case reflects a reasonable estimate of the actual value of Plaintiff's contract claim, it is relevant evidence that supports Defendants' argument that the amount in controversy in this case exceeds $75,000. See Benandi v. Mediacom Southeast, LLC, 2011 U.S. Dist. LEXIS 125084, *7-8, 2011 WL 5077403, *3 (S.D. Ala. September 30, 2011) (letter demanding $92,000 and describing in detail how the figure was derived from plaintiff's alleged injuries was not a speculative lump sum demand and was properly considered in denying motion to remand); McKeel v. Hodum Trucking, LLC., 2012 U.S. Dist. LEXIS 93781, *10-13 (S.D. Ala. June 18, 2012) (plaintiff's demand letter seeking $232,653.58 could be considered in determining whether the actual amount in controversy exceeded $75,000 where the damages were broken down into specific costs for past and future damages).

In addition, as stated above, Plaintiff clearly seeks punitive damages in this case against multiple defendants for intentional torts including slander, libel, tortious interference with a business relations, and fraud. "Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." Rae v. Perry, 392

11

Fed. App'x 753, 755 (11th Cir. 2010); see also Benandi, 2011 U.S. Dist. LEXIS 125084 at *13, 2011 WL 5077403, *4 (it is "appropriate to consider claim for punitive damages when determining the jurisdictional amount in controversy.").

Having considered the allegations in Plaintiff's complaint specifying damages in the amount of $60,826.85 for the breach of contract claim alone, as well as Plaintiff's $80,0000 settlement demand based on Plaintiff's reasonable estimate of its actual damages resulting from the alleged breach of contract, and Plaintiff's multiple claims for punitive damages, the Court finds that Defendants have demonstrated by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

### III. Conclusion

Based on the foregoing, the undersigned finds that the Court has subject matter jurisdiction over this case under 28 U.S.C. section 1332. Accordingly, it is recommended that Plaintiff's Motion to Remand (Doc. 26) be **DENIED**.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **28th** day of **June, 2013.**

                                                   **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**